**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Billy W. HILL, Defendant–Appellant.**

No. 93–5130.

United States Court of Appeals,
Tenth Circuit.

Sept. 27, 1994.

Michael G. Katz, Federal Public Defender, and Susan L. Forman, Asst. Federal Public

---

Defender, Denver, CO, for defendant-appellant.

Stephen C. Lewis, U.S. Atty., and Allen J. Litchfield, Asst. U.S. Atty., N.D. of Oklahoma, Tulsa, OK, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

The parties have agreed that this case may be submitted for decision on the briefs. *See* Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.

This is an appeal from two federal district court rulings denying Defendant's motion to suppress evidence and sentencing him as an armed career criminal. On December 16, 1992, police officers executed a search warrant for narcotics at a residence in Tulsa, Oklahoma. While the officers were performing their investigation at the residence, the telephone rang five to ten times. The various callers on the phone asked to speak to Wanda or Tony, the persons who resided at that address. One phone call was answered by Officer Carlock, and the caller identified herself as Katrina. Katrina asked for Wanda, and Officer Carlock told her that Wanda was not in. Katrina stated that she had purchased drugs from Wanda earlier in the day but had failed to sell them so she wanted to return the drugs and get her money back. Officer Carlock, who told Katrina that his name was "Bill," indicated that Wanda would not be home for a while, but that if she would stop by the house he would take care of her problem. Katrina stated that she would arrive at the house in about thirty minutes.

Approximately thirty-five minutes later, Defendant arrived at the scene. After two officers dressed in street clothes answered his knock on the door and greeted him, Defendant asked to see "Bill." Over the next several minutes, while the officers and Defendant apparently chatted on the couch, Defendant continually asked to see Bill. After not getting a suitable answer, Defendant eventually got up to leave and announced that he would return later. One of the officers then walked in front of the door to block

Defendant's exit, stuck his hand out, and identified himself as a police officer. According to the testimony of the officer, Defendant proceeded to walk directly into the officer's hand, at which time the officer's hand came to rest on a gun that was tucked under Defendant's waistband. Then, according to the officer, Defendant reached for his jacket pocket, so the officer grabbed Defendant's hand to intercept him from retrieving any weapons. The officer then searched Defendant and recovered a loaded weapon tucked into his pants and another gun in Defendant's jacket pocket.

Defendant was subsequently indicted in federal district court for one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before trial, Defendant filed a motion to suppress, arguing that the guns that formed the basis for his prosecution were illegally seized under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court held a pretrial evidentiary hearing on the motion and denied it. Defendant then pled guilty to the charge alleged in the indictment, reserving his right to appeal the denial of his suppression motion under Federal Rule of Criminal Procedure 11(a)(2). The government subsequently filed a notice that it was seeking to have Defendant sentenced as an armed career criminal pursuant to 18 U.S.C. § 924(e)(1). The notice cited three prior convictions as the basis for the enhancement: (1) a June, 1980 Kansas conviction for aggravated robbery, (2) a February 2, 1973 Kansas conviction for aggravated robbery, and (3) an October 19, 1966 Oklahoma conviction for second degree burglary.

■ We first address the district court's denial of Defendant's suppression motion. The district court found that the officer had reasonable suspicion to subject Defendant to a *Terry* pat-down, because the officer felt the gun hidden in Defendant's pants when Defendant conveniently walked into his outstretched hand. After feeling the gun, the officer witnessed Defendant attempt to reach into his jacket pocket, and the officer feared that he might be reaching for a gun. At that point, the officer "seized" Defendant and subjected him to a *Terry* pat-down search which

produced the two guns at issue in this case. While Defendant makes a persuasive argument that the circumstances prior to that incident did not give rise to a reasonable suspicion of illegal activity, there is no doubt that, if the officer's testimony is credited concerning the events that transpired in front of the door, the officer's actions were reasonable and justified. At the suppression hearing, the district court adopted the officer's version of the facts, and Defendant has not provided this court with a basis to rule that the district court's factual findings were clearly erroneous. The denial of Defendant's suppression motion is therefore affirmed.

■ Next, Defendant argues that the district court erred in enhancing his sentence as an armed career criminal. The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), provides a fifteen-year mandatory minimum for anyone who is convicted under 18 U.S.C. § 922(g) and has three prior convictions for violent felonies or serious drug offenses. The district court enhanced Defendant's sentence under § 924(e)(1) based on the evidence of Defendant's three prior convictions supplied by the prosecution. Defendant claims that the district court erred in this respect, because the government did not submit sufficient evidence that the 1966 second degree burglary conviction was a "violent felony" for purposes of enhancement.

Because of the wide variances in state law burglary statutes, the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), created a narrow definition of burglary for purposes of implementing § 924(e). The Court stated:

> We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Id.* at 599, 110 S.Ct. at 2158. In determining whether a conviction properly counts toward enhancement, *Taylor* provides that the sentencing court is to use a "categorical approach" rather than inquire into the underlying facts. *Id.* at 600, 110 S.Ct. at 2159. This approach requires a comparison of the elements of the relevant state statute with the basic elements of burglary adopted in *Taylor. Id.*

The Oklahoma law under which Defendant was convicted defines second degree burglary as follows:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okl.Stat. title 21 § 1435.

■ Because this Oklahoma statute defines burglary to include the breaking and entering of automobiles, tents, coin-operated machines, railroad cars, trucks, trailers, vessels, and booths, it is clearly overbroad for purposes of the *Taylor* definition.[1] Therefore, convictions under it cannot, as a categorical matter, provide a basis for enhancement. *See United States v. Barney*, 955 F.2d 635, 638 (10th Cir.1992) (burglary statute that includes automobiles and vending machines overbroad for purposes of *Taylor* and cannot provide basis for enhancement under Armed Career Criminal Act). *Taylor* further provides, however, that where the state statute is broader than the generic *Taylor* definition, the sentencing court may review the charging document and the jury instructions to see if the jury necessarily found the elements of a *Taylor* generic burglary. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. If, from these documents, it is clear to the sentencing court that the earlier conviction actually satisfied the *Taylor* definition of

---

1. The government asserts that in *United States v. Amos*, 984 F.2d 1067, 1071 (10th Cir.1993), this court held that the Oklahoma second degree burglary statute at issue in this case is not overbroad for purposes of *Taylor*. However, *Amos* simply does not stand for the government's asserted proposition. Because it includes places and objects beyond mere buildings, the Oklahoma statute is a classic example of an overbroad burglary statute.

burglary, then it may be used for enhancement purposes. *Id.*

In the 1966 burglary case, however, Defendant did not face a jury because he pled guilty, so no jury instructions existed for the district court to review. In the context of a guilty plea, the Tenth Circuit has held:

> We join other circuits which have considered this question in holding that where enhancement is sought on the basis of a conviction obtained through a guilty plea, the sentencing court may look to the text of the underlying indictment or information and the *text of the guilty plea* to determine whether the defendant was charged with and *admitted conduct* which falls without question within the ambit of Taylor's generic definition.

*Barney,* 955 F.2d at 639 (emphasis added).

The policy behind the requirement that the government supply the text of the guilty plea is clear: The crime that a defendant is charged with and the crime that he ultimately pleads guilty to in a plea bargain can be, and often are, quite different. In the context of an overbroad burglary statute, for example, a person could break into a building, steal money from vending machines inside the building, and then break into a car in the parking lot as he is leaving the scene. Although he may originally be charged with three counts of second degree burglary under a statute similar to Oklahoma's, he may end up pleading guilty to burglarizing vending machines in exchange for having the other two charges dropped. In such a case, the conviction would not meet the generic definition of *Taylor,* and, therefore, could not be used for enhancement.

In this case, the government did introduce a copy of the Information that originally charged Defendant with second degree burglary of a building. However, the government did not introduce the *text* of the guilty plea, so the sentencing court had no way of knowing precisely what acts Defendant admitted to committing under *Barney.* Instead, the government offered police reports reflecting the Tulsa police department's investigation of the underlying facts of the crime. Clearly, these documents did not satisfy the *Barney* standard, and they represent the kind of "inquiry into the underlying facts" that *Taylor* specifically rejected. *Taylor,* 495 U.S. at 600, 110 S.Ct. at 2159.

The government also introduced the Judgment from the 1966 conviction, which indicated that Defendant pled guilty to second degree burglary. In some circumstances, a Judgment could compensate for the lack of the text of the guilty plea if its specificity cured any doubt that the conviction met the *Taylor* definition. For example, if the Judgment stated that a defendant pled guilty to "second degree burglary of a building," it would be clear that the defendant's plea met the generic *Taylor* definition. In this case, however, the Judgment failed to provide specificity as to the underlying facts to which Defendant admitted, but simply stated that Defendant pled guilty to "second degree burglary." Therefore, the Judgment offered by the prosecution fails to salvage the 1966 Oklahoma conviction as one that may be used for enhancement purposes under *Taylor* and *Barney.*[2]

For all of the above reasons, we hold that the government failed to prove that the 1966 Oklahoma conviction for second degree burglary was for a "violent felony" under *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and *United States v. Barney,* 955 F.2d 635, 638 (10th Cir.1992). Accordingly, the district court erred in sentencing Defendant as an armed career criminal, and we REVERSE and REMAND for resentencing. The district court's denial of Defendant's suppression motion is AFFIRMED.

BALDOCK, Circuit Judge, dissenting in part.

I am unable to join that portion of this court's opinion reversing Defendant's sen-

2. The government also asserts that this case is indistinguishable from *United States v. Amos,* 984 F.2d 1067, 1070–71 (10th Cir.1993). In *Amos,* this court held that the defendant's Oklahoma conviction for second degree burglary was properly considered for enhancement, despite the government's failure to submit the text of his guilty plea. In that case, however, the defendant admitted at his federal sentencing hearing that his earlier conviction fell within the *Taylor* definition of burglary, so the defendant's own admission cured any lack of specificity in the government's evidence. *Id.* at 1071 n. 3.

tence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Relying on *United States v. Barney*, 955 F.2d 635, 639 (10th Cir.1992), this court holds that the government was required to produce the *text* of Defendant's guilty plea to his 1966 second degree burglary conviction in order to prove Defendant was convicted of conduct which fell within the generic definition of burglary as set forth in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Because I conclude the government established that Defendant's 1966 burglary conviction represents conduct falling within *Taylor*'s definition of burglary even in the absence of the *text* of Defendant's guilty plea, I must respectfully dissent.

In *Taylor*, the Supreme Court defined burglary for § 924(e) enhancement purposes as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599, 110 S.Ct. at 2158. Where a defendant has been convicted under a state statute which defines burglary broader than *Taylor*, the conviction may nevertheless be used for enhancement purposes if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602, 110 S.Ct. at 2160.

In instances where no jury instructions exist because the defendant pleaded guilty, we held in *Barney* that the sentencing court may review "the underlying indictment or information and the text of the guilty plea to determine whether the defendant was charged with and admitted conduct which falls without question within the ambit of *Taylor*'s generic definition." *Barney*, 955 F.2d at 639. If the defendant pleaded guilty to charges supported by an indictment or information satisfying *Taylor*'s burglary definition, the conviction may be used for enhancement purposes. *Id.* at 640.

Applying *Barney* to the instant case, this court concludes that although the government submitted Defendant's burglary infor-

mation and the "judgment and sentence on plea of guilty" to second degree burglary in support of the enhancement, Defendant's sentence must be reversed because the government did not introduce the *text* of Defendant's guilty plea. In the absence of the *text* of the plea, this court concludes the district court "had no way of knowing precisely what acts Defendant admitted to committing under *Barney*." The court further concludes the judgment of conviction fails to compensate for the lack of the *text* of the plea because the judgment merely states that Defendant pleaded guilty to "second degree burglary." As a result, this court holds the government failed to prove Defendant's 1966 burglary conviction represented conduct satisfying *Taylor*'s generic burglary definition. I disagree.

Although *Barney* permits a sentencing court to examine the *text* of the guilty plea, *see id.* at 639, I do not read *Barney* as requiring the government to introduce the *text* of the plea where the charging instrument and judgment necessarily show that the defendant's conviction represents conduct falling within the ambit of *Taylor*'s burglary definition.[1] Indeed, in *United States v. Lujan*, 9 F.3d 890, 892 (10th Cir.1993)—a case involving the government's obligation to introduce jury instructions to support an enhancement—we held that *Taylor* does not "require the government to provide jury instructions in a case where the charging document and verdict necessarily show that the jury found the requisite elements of burglary."

Likewise, in the instant case, the charging document and the judgment—when read as a whole—"establish without question, that [Defendant's 1966 burglary conviction] fulfills the elements required by *Taylor*." *Barney*, 955 F.2d at 640. The information charged Defendant with second degree burglary and stated in explicit detail that Defendant:

> unlawfully, wrongfully, wilfully [sic], feloniously and burglariously, [broke] and en-

---

1. As pointed out in this court's opinion, the government might be required to introduce the *text* of a defendant's guilty plea where the crime with which the defendant is charged differs from the crime he ultimately pleads guilty to in a plea bargain. However, we are not presented with such a scenario in this case. Rather, Defendant was charged in an information with a single count of second degree burglary and pleaded guilty to this count.

tered into a certain building ... owned by and in possession of STANDARD MOTOR SUPPLY in which building personal property of value was kept and contained, by breaking open the outer skylight of the said building, and entering the said building without the consent of said owner, with the wilfull [sic] and felonious intent to steal said property.

Defendant's burglary information included all the elements of a generic burglary as defined in *Taylor*. Moreover, the corresponding judgment indicates that Defendant pleaded guilty to second degree burglary. By pleading guilty, Defendant necessarily admitted "all material facts alleged in the charge." *United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir.1994). Because Defendant pleaded guilty to a charge supported by an information which satisfied the *Taylor* definition, his 1966 burglary conviction properly counts toward enhancement.

I would affirm the sentence imposed by the district court.